Eastern District of Kentucky
FILED

JAN 04 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-231-GWU

RICKY R. CARROLL,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).   The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind

shall accept as adequate to support a conclusion;" it is based on the record as a

whole and must take into account whatever in the record fairly detracts from its

weight.  Crouch, 909 F.2d at 855.

1

Carroll

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

2

appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely

3

using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The current administrative law judge (ALJ) noted that prior benefit applications filed by the plaintiff had been denied in an ALJ decision on February 20, 2003 and that there was currently no good cause to reopen the findings on the period of time prior to that date. (Tr. 14). He found that, for the current period, Carroll, a forty-one year old individual with a high school education, had chronic lumbar spine strain and an adjustment disorder with depressed mood. (Tr. 14, 16, 21).[1] Despite these conditions, the ALJ concluded that the plaintiff was able to do medium level work which were simple and low stress and involved minimal social interaction. (Id.). Based on this vocational profile, the vocational expert identified a

---

[1]He concluded that the plaintiff's complaints of chest pain, gastroesophageal reflux disease, headaches, and chronic fatigue were either not "severe" or not a medically determinable complaint. (Tr. 15).

4

Carroll

significant number of jobs which he could perform. (Id.). Therefore, benefits were denied. (Tr. 22).

The ALJ noted that the plaintiff had received very little treatment for his physical complaints since the date of the last, February, 2003 decision, and that his physical condition was "stable." (Tr. 18). The plaintiff made two office visits to Dr. Ghassan Shakhashiro's office, at which time his heart and lungs were normal despite complaints of chest pain (Tr. 297) and the plaintiff's only complaint on the other occasion was that his left ear was stopped up (Tr. 298), not ultimately one of his major complaints. A consultative physical examination in June, 2003 yielded comments indicating that the plaintiff had some tenderness and decreased range of motion (although not "too much") in his lumbar spine, as well as some decrease in shoulder flexion (Tr. 217); the physician also recorded elevated blood pressure, but noted that there had been a negative exercise stress test and that heart sounds were normal (Tr. 216). The examiner concluded by opining that the only limitation was in being exertionally restricted to medium level work. (Tr. 217-218). Two medical reviewers completed assessment forms, also indicating that the plaintiff was capable of medium level work with no non-exertional physical restrictions. (Tr. 133-138, 241-248). Clearly, then, there was more than sufficient new evidence during the current period which established that the plaintiff was capable of medium

Carroll

level work, but would have no non-exertional physical restrictions, the exact physical factors cited to the vocational expert (Tr. 333).

The plaintiff argues that the mental factors cited to the vocational expert (i.e., a limitation to simple, low-stress jobs where social interaction is minimal at Tr. 333) were improper.

The plaintiff was seen at the Mountain Comprehensive Care Center on over ten occasions during the current period. When seen in February, 2003, the patient reported at least some improvement in depression and insomnia with medication (Tr. 272), but two months later, the plaintiff was under increased stress and more irritable as one of his sons was having surgery to remove a brain abscess (Tr. 271). Caring for the son without help from his family and taking care of his other children was causing the plaintiff problems in mid-year, when Carroll described dealing with daily depression. (Tr. 270). In September, although his medication was doing well, the patient reported losing his temper in a conflict with his oldest son. (Tr. 269). He had daily episodes when he did not want to deal with anyone and felt increased anger and stress when his children were at home. (Tr. 265- 266). Later in the year, he had continued stress and depression over his sister's health and his 13 year old son's conduct. (Tr. 304). In February, 2004, he was still not "doing well", having no friends, no hobbies, no car and raising 5 children by himself. (Tr. 307). His depression did not improve subsequently. (Tr. 307-309). Very unfortunately for the

plaintiff, however, no work-related limitations were cited by this treating source, nor was any GAF level cited.  Furthermore, as far as treating sources were concerned, in one of Dr. Shakhashiro's notes during the current period, there was a reference to the fact that the plaintiff had intact judgment, insight, and memory (Tr. 297).

A consultative examination was conducted in mid-2003 by William Rigby, who described the plaintiff as being from a deprived background and appearing below average intellectually, but also being fully alert, with intact concentration and attention, and, although he elaborated about many stressors in his life, had no obvious manifestations of anxiety in his interview. (Tr. 221-222).  Rigby opined that the plaintiff appeared free of major mental illness (Tr. 224) and that the only ability described as less than "good" was an undefined  "fair" ability to adapt or respond to the stress and pressures in a day-to-day work setting (Tr. 225).

Two medical reviewers later opined that the plaintiff's dysthymia was not "severe." (Tr. 226, 229, 250).

Given this variety of new information in the current period, the hypothetical mental factors were adequate.

The plaintiff's only specific argument with regard to the mental factors is that the ALJ did not comply with Drummond v. Commissioner of Social Security, 126 F.3d 837 (6thCir. 1997).  The ALJ based his mental factors on specific, new evidence of the plaintiff's mental status which was introduced during the current

7

Carroll

application process. Despite the plaintiff's argument to the contrary, the Court also finds that the distinction between "simple work with limited public contact and low to moderate levels of stress" used by the prior ALJ essentially indistinguishable from the "simple, low-stress jobs where social interaction is minimal" or, if anything, that the more current limitation suggests an ability to tolerate even less social interaction.

For these reasons, as well as those cited in the defendant's brief, the decision will be affirmed.

This the _____ day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE